UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION
125 Broad Street – 18th Floor
New York, NY 10004,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street – 18th Floor
New York, NY 10004,

AMERICAN CIVIL LIBERTIES UNION
OF THE DISTRICT OF COLUMBIA
915 15th Street, NW – 2nd floor
Washington, DC 20005,

    Plaintiffs,

  v.

FEDERAL BUREAU OF PRISONS
320 First Street, NW
Washington, DC 20535,

UNITED STATES DEPARTMENT OF
JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530,

    Defendants.

No. 1:21-cv-_____

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**
(Freedom of Information Act)

1. Plaintiffs American Civil Liberties Union, American Civil Liberties Union

Foundation, and American Civil Liberties Union of the District of Columbia (together, the

"ACLU") bring this action against the Federal Bureau of Prisons ("BOP") and the United States

Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and

injunctive relief to compel compliance with the requirements of FOIA to immediately release improperly withheld agency records about the placement of people in home confinement in accordance with the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and the administration of these placements.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has personal jurisdiction over the parties. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

3.  The American Civil Liberties Union is a nationwide non-profit organization with approximately two million members dedicated to protecting the civil liberties and civil rights of all Americans, including the rights of incarcerated people. The ACLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and civil rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

4.  Plaintiff American Civil Liberties Union Foundation is an affiliated non-profit organization that shares the goals of the American Civil Liberties Union and engages in litigation and public education to support those goals.

5. Plaintiff American Civil Liberties Union of the District of Columbia is the Washington, DC, affiliate of the American Civil Liberties Union.

6. Defendant Federal Bureau of Prisons is an agency of the United States Government within the meaning of the Freedom of Information Act. It has possession, custody, and control of some or all of the records that Plaintiffs seek in this action.

7. The United States Department of Justice is an agency of the United States Government within the meaning of the Freedom of Information Act. It has possession, custody, and control of some or all of the records that Plaintiffs seek in this action.

## FACTS

### Background

8. The COVID-19 virus continues to pose a disproportionate risk to incarcerated people in the United States, including in federal prisons. As of November 29, 2021, 123 people incarcerated in BOP custody have confirmed positive test results for COVID-19 and 41,897 have been infected with COVID-19.[1] Two hundred and sixty-seven people in BOP custody have died from COVID-19.[2] Sixty-four of the 98 BOP facilities remain on the highest tier of COVID precautions, and another 22 facilities are operating with moderate COVID-19 modifications.[3]

---

[1] "COVID-19 Cases," Bureau of Prisons, https://www.bop.gov/coronavirus/, last visited Nov. 22, 2021.
[2] *See id.*
[3] *See id.*

9.  Reducing population density in prisons and jails is one of the most effective ways to combat the virus.[4]  Having fewer people incarcerated allows for more effective social distancing and can therefore slow the spread of the virus.[5]

10.  Prior to the pandemic, under 18 U.S.C. §3624(c)(2), the BOP had authority to place incarcerated people in home confinement "for the shorter of [the last] 10 percent of the term of imprisonment of that prisoner or 6 months," but not exceeding 12 months. In March 2020, the CARES Act expanded BOP's authority to place people on home confinement for longer periods of time so that BOP could reduce the federal prison population and the spread of COVID-19:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Sec. 12003(b)(2), 134 Stat. 516, 18 U.S.C. § 3621 note. "[T]he term 'covered emergency period' means the period beginning on the date on which the President declared a national emergency under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID–19) and ending on the date that is 30 days after the date on which the national emergency declaration terminates." CARES Act, Sec. 12003(a)(2).

11.  Recognizing home confinement as "[o]ne of BOP's tools to manage the prison population and keep inmates safe," in March, 2020, Attorney General William Barr ordered the BOP to transfer certain incarcerated people to home confinement to decrease health risks.[6] Barr

---

[4] *See* "Flattening the Curve for Incarcerated Populations—Covid-19 in Jails and Prisons," Matthew J. Akiyama, et al., New England Journal of Medicine 382, 2075 (2020); "COVID-19 in Prisons and Jails in the United States," Laura Hawks, et al., Journal of American Medical Association, 180, 1041 (2020); "Correctional Facilities In The Shadow Of COVID-19: Unique Challenges And Proposed Solutions," Brie A. Williams, et al., Health Affairs (2020).
[5] *See* id.
[6] https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf

described home confinement decisions as "granting an[] inmate discretionary release"[7] and explained that incarcerated people who meet certain criteria are considered "appropriate candidates for home confinement rather than continued detention" at BOP prisons.[8] The BOP began placing people categorized as non-violent on home confinement, mainly those who were elderly or otherwise especially vulnerable to COVID-19.[9] In June 2020, the BOP Director and Medical Director testified in the Senate that people being moved to home confinement under the CARES Act would be on home confinement "for service of the remainder of their sentences."[10]

12.  Relying on these representations, people moved to home confinement have successfully reintegrated themselves into society. As of March 2021, of approximately 24,000 inmates released to home confinement since the beginning of the pandemic, only 21 were returned to prison for rule violations and only one had committed a new crime.[11] Many have found gainful employment, and they have reunited with spouses, children, and other loved

---

[7] The Attorney General, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic, at 2 (Mar. 26, 2020) available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

[8] The Attorney General, Increasing Use of Home Confinement at Institutions Most Affected by COVID19, at 2 (Apr. 3, 2020) available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

[9] *See* Federal Bureau of Prisons, Memorandum for Chief Executive Officers re; Home Confinement (April 13, 2021), available at https://www.fd.org/sites/default/files/covid19/2021.4.13_-_bop_home_confinement_cares_memo.pdf (stating that to be eligible for home confinement under the CARES Act, BOP must verify that a person's "current or a prior offense is not violent, a sex offense, or terrorism-related.").

[10] Dep't of Justice, Statement of Michael D. Carvajal, Director, and Dr. Jeffrey Allen, Medical Director, Federal Bureau of Prisons, Before the U.S. Senate Committee on the Judiciary (Carvajal and Allen Statement) at 6 (June 2, 2020), available at https://www.judiciary.senate.gov/imo/media/doc/Carvajal-Allen%20Joint%20Testimony.pdf

[11] *See* The Hill, DOJ Faces Big Decision on Home Confinement (May 9, 2021), https://thehill.com/homenews/administration/552447-doj-faces-big-decision-on-home-confinement.

ones.[12] Ordering them back to prison would disrupt their lives and the lives of their loved ones. It would also destroy the laudable efforts they have made to reintegrate into society.

13. Despite BOP's representations that people released to home confinement pursuant to the CARES Act would stay at home for the remainder of their sentences, the DOJ Office of Legal Counsel (OLC) issued a Memorandum Opinion in the last days of the Trump Administration concluding that once the President lifts the emergency declaration, BOP *must* reincarcerate people who were moved to home confinement under the CARES Act and have more than the standard home confinement term left on their sentences.[13]

13. OLC's legal analysis has been criticized but remains unchanged.[14] In September 2021, the Biden Administration announced that the President will consider commuting the sentences of people on home confinement who were sentenced for non-violent drug offenses and who have four years or less to serve on their sentences.[15] This category does not include everyone who would be subject to reimprisonment under the OLC Memorandum Opinion.

---

[12] NBC News, Thousands were released from prison because of Covid. Will they have to return? (Sept. 12, 2021), https://www.nbcnews.com/news/nbcblk/thousands-released-prison-covid-will-return-rcna1977; Washington Post, I was sent back to jail for going to a computer class. It's time to act on home confinement (July 15, 2021), https://www.washingtonpost.com/opinions/2021/07/15/gwen-levi-home-confinement-prison-biden/; Washington Post, Inmates sent home amid pandemic may have to return under Trump-era policy (April 21, 2021), https://www.washingtonpost.com/local/public-safety/federal-prisoners-pandemic/2021/04/21/5d4cc3c8-96fa-11eb-8e42-3906c09073f9_story.html

[13] Dep't of Justice, Home Confinement of Federal Prisoners After the COVID-19 Emergency (January 15, 2021), available at https://www.justice.gov/olc/file/1355886/download.

[14] *See e.g.*, Democracy Forward et al., *Letter to the Office of Legal Counsel and Deputy Attorney General*, (February 18, 2021), available at https://democracyforward.org/wp-content/uploads/2021/08/Letter-Seeking-Reconsideration-of-OLC-Home-Confinement-Memo-8.4.21.pdf

[15] Sam Stein, *Biden starts clemency process for inmates released due to Covid conditions*, Politico (September 13, 2021) available at https://www.politico.com/news/2021/09/13/biden-clemency-covid-inmates-511658

14.  Meanwhile, thousands of people on home confinement face uncertainly about whether they may be ordered back to prison on short notice, discouraging them from making personal, employment-related, or educational commitments and hindering their reintegration into society.

### Plaintiffs' FOIA Requests and Defendants' Responses

15.  Seeking to learn more about the people on home confinement who may be sent back to prison even if they comply with their release conditions, the ACLU submitted FOIA requests for information related to home confinement placements under the CARES Act between September 24, 2021, and October 8, 2021.

16.  Each of the ACLU's FOIA requests sought a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). These requests seek information that will help the public understand how many people are in jeopardy of reincarceration, the circumstances of these peoples' criminal cases, and the process by which the government plans to reincarcerate these people at the end of the pandemic. The information will also assist the ACLU in its ongoing efforts to persuade the government not to require people who have been placed in home confinement under the CARES Act to return to prison—efforts that have already included television and print media advertisements.[16] None of this information is currently available to the public. The ACLU did

---

[16] *See* https://www.youtube.com/watch?v=5Onuqtn6f_k (television advertisement); https://thewashingtonpost.pressreader.com/@Reader865537/csb_NH1ulunqn0VXxMIZBLfH-1Ly27zxBdVYhAlzLMvKepV-DK_BOflL89GyqZ2UE0vWWIEWpsrnzZdjSweSV-vejQ (Washington Post advertisement).

not file these requests to further its commercial interest. As described above, the ACLU is a noncommercial organization, and the ACLU will make significant information it obtains from these requests available to the public at no cost.

**Request for Data on Placements in Home Confinement**

17.  On September 24, 2021, Plaintiffs submitted a FOIA Request (attached as Exhibit A) to BOP seeking the release of records providing information about people moved to home confinement under the authority of the CARES Act, including their sentences, the dates of their transfers to home confinement, and their projected release dates. The request made clear that it did not seek names, register numbers, or any other personal identifying information.

18.  Plaintiffs requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E), as the COVID-19 national emergency may end at any time and it is urgent that this information be obtained to assist public education and legislative efforts on the status of those placed in home confinement by the CARES Act. There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

19.  The BOP acknowledged receipt of this request on September 28, 2021 and assigned it FOIA Number 2021-06841. In its response, the BOP denied the request for expedited processing based on insufficient information to support urgency to inform the public, and designated the matter as complex.

20.  Plaintiffs corresponded with Defendants on September 30 and October 1, 2021, and narrowed their request in the hope of accelerating the process of producing the requested information. (Attached as Exhibit B).

21.  Plaintiffs appealed the denial of their request for expedited processing on October 12, 2021. The BOP denied this appeal on October 15, 2021.

22.  No records have been produced in response to this request.

**Request for DOJ Policies Implementing OLC Memorandum Opinion**

23.  On September 30, 2021, Plaintiffs submitted two FOIA requests to DOJ seeking the release of copies of DOJ policies implementing the OLC Memorandum Opinion from the Office of the Attorney General and the Office of the Deputy Attorney General. (Attached as Exhibits C and D). Plaintiffs requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) as the COVID-19 national emergency may end at any time and it is urgent that this information be obtained to assist public education and legislative efforts on the status of those placed in home confinement by the CARES Act.

24.  DOJ acknowledged receipt of these requests on October 8, 2021, consolidated the two requests, closed one request as duplicative, and assigned the open request FOIA Number 2021-02288 In this acknowledgement DOJ denied expedited processing because ACLU is not "primarily engaged information dissemination," and designated the matter as complex.

25.  Plaintiffs appealed the denial of expedited processing on October 18, 2021. The appeal was denied on October 27, 2021.

26.  No records have been produced in response to this request.

**Request for BOP Policies Implementing OLC Memorandum Opinion**

27.  On October 8, 2021, Plaintiffs submitted a FOIA request to BOP seeking the release of final BOP policies, directives, decisions, instructions, memoranda, or other documents that were promulgated in response to, based on, cite, and/or implement the OLC Memorandum Opinion concluding that certain people BOP placed on home confinement pursuant to expanded

authority under the CARES Act must be reincarcerated when the President lifts the COVID-19 emergency declaration. The request also sought the same records from the Office of the Attorney General or Department of Justice that were in BOP's custody. (Attached as Exhibit E). Plaintiffs sought expedited processing.

28.  BOP acknowledged this request on October 12, 2021, designating it FOIA Number 2022-00192 and granting it expedited status. However, BOP stated that this request may still take up to six months to complete, despite being expedited.

29.  No records have been produced in response to this request.

## CLAIM FOR RELIEF

### Violation of FOIA, 5 U.S.C. § 552

30.  FOIA requires agencies of the federal government to "promptly" release records to the public upon request, unless a specific statutory exemption applies or disclosure is prohibited by law. 5 U.S.C. § 552(a)(3)(A). An agency must determine within twenty working days after receipt of a request for records whether to comply with the request and must immediately notify the requester of its determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i). A requester is deemed to have exhausted its administrative remedies if the agency fails to comply with FOIA's applicable time limit provisions. 5 U.S.C. § 552(a)(6)(C)(i).

31.  A requester may seek expedited processing of a request where there is a "compelling need." 5 U.S.C. § 552(a)(6)(E). An agency must process "as soon as practicable" any request for records to which it has granted expedited processing. 5 U.S.C. § 552(a)(6)(E)(iii).

32.  Defendants are agencies within the meaning of FOIA, 5 U.S.C. § 552(f) and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

33. Plaintiffs properly requested records within the possession, custody, and control of Defendants.

34. Defendants are wrongfully withholding non-exempt agency records requested by Plaintiffs by failing to produce records responsive to the ACLU's FOIA request within the time specified by FOIA.

35. Defendants' failure to process "as soon as practicable" FOIA Number 2022-00192, which was granted expedited processing, and to release non-exempt records violates FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(E)(iii) and Defendants' corresponding regulations.

36. Plaintiffs are therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA request and to justify the withholding of any responsive records withheld under claim of exemption.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court:

A. Declare unlawful the Defendants' failure to comply with FOIA;

B. Declare that Plaintiffs are entitled to disclosure of the requested records;

C. Declare that requests Nos. 2021-06841 and 2021-02288 are entitled to expedited processing;

D. Order Defendants to immediately process Plaintiffs' requests and disclose, in their entirety, unredacted versions of all records responsive to Plaintiffs' requests except for any portions that are specifically exempt from disclosure under FOIA;

E. Enjoin Defendants from charging Plaintiffs search, review or duplication fees for the processing of the requests;

F. Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiffs' requests;

G. Retain jurisdiction of this action to ensure that no agency records are wrongfully withheld;

H. Grant such other and further relief as the Court may deem just and proper.


November 29, 2021                              Respectfully submitted,

                                              Emma A. Andersson[*]
                                              American Civil Liberties Union Foundation
                                              125 Broad Street – 18th floor
                                              New York, NY 10004
                                              (347) 931-6337
                                              eandersson@aclu.org

                                              */s/ Arthur B. Spitzer*
                                              Arthur B. Spitzer (D.C. Bar No. 235960)
                                              American Civil Liberties Union Foundation
                                                of the District of Columbia
                                              915 15th Street, NW – 2nd floor
                                              Washington, DC 20005
                                              202-601-4266
                                              aspitzer@acludc.org

                                              Attorneys for Plaintiffs

---

[*] Motion for admission *pro hac vice* forthcoming.