EXHIBIT D

September 30, 2021

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice, 6th Floor
441 G Street, N.W.
Washington, D.C. 20530-0001

*Submitted via FOIA STAR*



Re: **Request Under Freedom of Information Act Concerning Final Policies Implementing OLC Memorandum Requiring BOP to Reincarcerate People Who Were Placed on Home Confinement Under the CARES Act**

**(Expedited Processing & Fee Waiver Requested)**

To Whom It May Concern:

The American Civil Liberties Union, the American Civil Liberties Union Foundation, and the American Civil Liberties Union of the District of Columbia (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for any and all final Bureau of Prisons (BOP), Office of the Attorney General, Office of the Deputy Attorney General, or Department of Justice policies implementing the Office of Legal Counsel's (OLC) memorandum concluding that certain people the BOP placed on home confinement pursuant to expanded authority under the Coronavirus Aid, Relief, and Economic Security (CARES) Act must be reincarcerated when the President lifts the COVID-19 emergency declaration.[2]

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] U.S. Department of Justice, Home Confinement of Federal Prisoners After the COVID-19 Emergency (January 15, 2021), https://www.justice.gov/olc/file/1355886/download.

### I. Background

In March 2020, the CARES Act expanded BOP's authority to place incarcerated people on home confinement under 18 U.S.C. §3624(c)(2) in order to reduce the federal prison population and the spread of COVID-19. CARES Act Sec. 12003(b)(2). In January 2021, OLC published a memorandum concluding that once the COVID-19 emergency period is over, BOP must reincarcerate people who were put on home confinement under CARES and have more than the standard home confinement term left on their sentences.[3] On September 7, 2021, the United States filed a brief in federal district court stating that "[a]t present, neither the Attorney General nor the Bureau has acted on this advice by setting forth a policy to govern CARES Act home confinement placements after the end of the COVID-19 emergency."[4]

Since it was reported that OLC—under President Biden—would not rescind or reconsider its decision,[5] significant public outcry has ensued.[6] To provide the American public with information about how BOP plans to reincarcerate thousands of people when the pandemic ends, the ACLU seeks the relevant materials through this FOIA request.



---

[3] U.S. Department of Justice, *Home Confinement of Federal Prisoners After the COVID-19 Emergency* (January 15, 2021), https://www.justice.gov/olc/file/1355886/download.

[4] *Martinez-Brooks v. Garland,* Defendants' Brief In Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), No. 21-11307 (BRM)(JSA) (D. N.J. Sept. 7, 2021) at 9.

[5] *See* Charlie Savage and Zolan Kanno-Youngs, *Biden Legal Team Decides Inmates Must Return to Prison After Covid Emergency*, N.Y. Times (July 19, 2021), https://www.nytimes.com/2021/07/19/us/politics/biden-prisoners-covid.html.

[6] *See e.g.,* John Yang, *Inmates released to home confinement during pandemic fear 'devastating' reincarceration*, PBS News Hour (September 21, 2021) https://www.pbs.org/newshour/show/inmates-released-to-home-confinement-during-pandemic-fear-devastating-reincarceration; *Unless Biden intervenes, people will needlessly be sent back to prison*, Editorial Board, Washington Post (July 25, 2021) https://www.washingtonpost.com/opinions/2021/07/25/unless-mr-biden-intervenes-people-will-needlessly-be-sent-back-prison/; Dan King, *Biden Must Act to Ensure Nonviolent Offenders Aren't Sent Back to Prison*, The Bulwark (August 19, 2021), https://www.thebulwark.com/biden-must-act-to-ensure-nonviolent-offenders-arent-sent-back-to-prison/; Democracy Forward et al., *Letter to the Office of Legal Counsel and Deputy Attorney General*, (February 18, 2021), https://democracyforward.org/wp-content/uploads/2021/08/Letter-Seeking-Reconsideration-of-OLC-Home-Confinement-Memo-8.4.21.pdf; Kristine Phillips, *ACLU, NAACP among those pressing Biden to grant clemency to inmates sent home during COVID-19*, USA Today (July 19, 2021) https://www.usatoday.com/story/news/politics/2021/07/19/biden-pressed-grant-clemency-inmates-sent-home-during-covid/7980882002/



## II. Requested Records

The ACLU seeks the following records:

(1) Any and all final Office of the Attorney General, Office of the Deputy Attorney General, or Department of Justice policies, directives, decisions, instructions, memoranda, or other documents that were promulgated in response to, based on, cite, and/or implement the OLC memorandum concluding that certain people BOP placed on home confinement pursuant to expanded authority under the CARES Act must be reincarcerated when the President lifts the COVID-19 emergency declaration.[7]

(2) Any and all final BOP policies, directives, decisions, instructions, memoranda, or other documents that were promulgated in response to, based on, cite, and/or implement the OLC memorandum concluding that certain people BOP placed on home confinement pursuant to expanded authority under the CARES Act must be reincarcerated when the President lifts the COVID-19 emergency declaration.[8]

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[9] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A. *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged*

---

[7] U.S. Department of Justice, Home Confinement of Federal Prisoners After the COVID-19 Emergency (January 15, 2021), https://www.justice.gov/olc/file/1355886/download.

[8] *Id.*

[9] *See also* 28 C.F.R. s 16.5(e).

*government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. *Id.*[10] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[11]



The ACLU regularly publishes the *ACLU* magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 900,000 people. The ACLU also publishes regular updates and alerts via email to 4.8 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 5.9 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[12] and

---

[10] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

[11] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD,* 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[12] *See, e.g.*, Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://www.aclu.org/press-releases/federal-court-permanently-blocks-billions-dollars-border-wall-construction; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists; Press Release, ACLU, ACLU, Privacy International Demand Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018), https://www.aclu.org/press-releases/aclu-privacy-international-demand-government-disclose-nature-and-extent-hacking; Press Release, ACLU, New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://www.aclu.org/news/new-documents-reveal-government-plans-spy-keystone-xl-protesters; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://www.aclu.org/news/aclu-obtains-documents-showing-widespread-abuse-child-immigrants-us-custody; Press Release, ACLU, ACLU Demands CIA Records on

ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[13]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to



Campaign Supporting Haspel Nomination (May 4, 2018), https://www.aclu.org/news/aclu-demands-cia-records-campaign-supporting-haspel-nomination; Press Release, ACLU, Advocates File FOIA Request For ICE Documents on Detention of Pregnant Women (May 3, 2018), https://www.aclu.org/news/advocates-file-foia-request-ice-documents-detention-pregnant-women; Press Release, ACLU, Civil Rights Organizations Demand Police Reform Documents from Justice Department (Jan. 4, 2018), https://www.aclu.org/news/civil-rights-organizations-demand-police-reform-documents-justice-department; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://www.aclu.org/news/aclu-files-lawsuits-demanding-local-documents-implementation-trump-muslim-ban; Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, ACLU, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, ACLU, ACLU Sues for Bureau of Prisons Documents on Approval of CIA Torture Site (Apr. 14 2016), https://www.aclu.org/news/aclu-sues-bureau-prisons-documents-approval-cia-torture-site.

[13] *See, e.g.*, Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times, June 26, 2019, https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU attorney Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill, Mar. 21, 2019, https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records (quoting ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program (quoting ACLU attorney Hugh Handeyside); Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, The Associated Press, Jan. 18, 2017, https://www.apnews.com/865c32eebf4d457499c017eb837b34dc (quoting ACLU project director Hina Shamsi); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nathan Freed Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[14] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.



The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.[15]

---

[14] *See, e.g.*, ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016), https://www.aclu.org/ blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative* (2016), https://www.aclu.org/ report/leaving-girls-behind; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333.

[15] *See, e.g., ACLU v. ODNI*—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page,



The ACLU website includes many features on information obtained through the FOIA. The ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[16] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[17]

The ACLU plans to analyze, publish, and disseminate to the public information gathered through this Request. The records requested are not sought

---

https://www.aclu.org/cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ*—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ*—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-government-surveillance; *ACLU v. DOJ*—FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-demanding-olc-opinion-common-commercial-service-agreements; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingray foia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

[16] *The Torture Database*, ACLU Database, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[17] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/ safefree/ olcmemos_2009_0305.pdf; *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (Nov. 29, 2010), https://www.aclu.org/files/pdfs/natsec/faafoia 20101129/20101129Summary.pdf; *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.



for commercial use and the Requesters plan to disseminate information disclosed as a result of this Request to the public at no cost.

**B.** *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[18] Specifically, they pertain to how BOP plans to reincarcerate thousands of people when the President lifts the COVID-19 emergency declaration. As discussed in Part I, *supra*, there is ongoing public controversy and media attention about the prospect of people being forced back to prison even if they have complied with the terms of their home confinement and the President is now considering granting clemency to some of these people. The records sought relate to a matter of widespread and exceptional media interest in the fate of the people BOP placed in home confinement pursuant to the CARES Act.[19]

Further underscoring the urgency of informing the public about how thousands of people may be reincarcerated, at issue in this Request is the strong media interest in the government's plans to implement OLC's controversial memorandum.[20] Given this media interest and the lack of full public record about the process by which many people may be reincarcerated, there is an urgent need to for the public to access the requested documents. Expedited processing is therefore appropriate under 5 U.S.C. § 552(a)(6)(E) and the Department of Justice implementing regulations.[21]

### IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[22] The ACLU also requests a waiver of search fees on the

---

[18] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

[19] *See* note 4, *supra*.

[20] *See* Kevin Ring, "It's impossible to overstate how much the lack of transparency and communication by the administration is contributing to people's anxiety and fear." Twitter @KevinARing, (Sept. 13, 2021) https://twitter.com/KevinARing/status/1437559852868546567?s=20

[21] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

[22] *See also* 28 C.F.R. § 16.10(k)(2).

grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A. *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, this Request concerns how the government plans to reincarcerate people at the end of the pandemic. The records sought are certain to contribute to the public's understanding of how people on home confinement will be treated when the President lifts the emergency declaration.



The ACLU is not filing this Request to further its commercial interest. As described above, the ACLU is a noncommercial organization, and any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B. *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[23] The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[24]; *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of

---

[23] *See also* 28 C.F.R. § 16.10(k)(2)(ii)–(iii).

[24] *See also* 28 C.F.R. § 16.10(b)(6).



Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[25]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[26] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

---

[25] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; s*ee also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[26] The ACLU regularly receives FOIA fee waivers from federal agencies. For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA request for documents relating to the use of social media surveillance. In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA request for records pertaining to the authorities approved by President Trump in March 2017 which allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the Office of Inspector General granted fee-wavier requests regarding a FOIA request for records pertaining to U.S. involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil,



\*   \*   \*

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 28 C.F.R. § 16.5(e)(4).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Emma Andersson
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
T: (347) 931-6337
eandersson@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Sincerely,

*[signature: Emma Andersson]*

Emma Andersson\*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
T: (347) 931-6337
eandersson@aclu.org

*\*Admitted in California*

---

Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver request regarding a FOIA request related to policies and communications with social media companies' removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the Department of Justice for documents related to Countering Violent Extremism Programs.